CHARLES GOFF *vs*. GEORGE E. FILES ET ALS.

Kennebec.    Opinion, October 5, 1934.

*Joly & Marden*, for plaintiff.
*Manley O. Chase*, for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J.    Trover for the alleged conversion of forty tons of hay. To a decision for the defendants rendered by a Justice of the

Superior Court, who heard the case on an agreed statement of facts without intervention of a jury, the plaintiff excepts.

Succinctly stated, the facts necessary for the determination of the case are that on May 19, 1924, one George E. Files gave to Napoleon Pouliot a bond for a deed of the farms from which this hay was cut in the summer of 1933 by Vigue and Bolduc, assignees of the obligee's rights. They entered into lawful possession of the premises in April, 1932, and so remained until October, 1933. From them the plaintiff purchased this hay December 11, 1933, but on account of "the refusal of Files Brothers (the defendants) to allow Goff, plaintiff, to take the hay" the plaintiff never received it and as a consequence brought this action.

The defendants are the sons and assignees of the original obligor; their assignment dated May 12, 1933. It appears that the condition in the bond had been broken before the hay was cut and that no payment on the purchased premises was made "during the time Vigue and Bolduc were in possession." There was no foreclosure. Undisputedly the plaintiff's vendors, Vigue and Bolduc, succeeded to the rights of the original obligee in the bond and likewise the defendants to the rights of its original obligor.

Did Vigue and Bolduc own this hay at the time they sold it to the plaintiff? Thus is involved the right of one in lawful possession of real estate bonded to him to cut and have as his own property, hay, where at the time of the cutting the obligee is in default but the obligor has not exercised his right to take possession.

Exactly as presented this has not been determined in Maine, although it has been held that where there has been no default by the obligee, he is entitled to the hay cut "if severed by him while his possession is allowed to continue." *Look* v. *Norton*, 94 Me., 547, 550, 48 A., 117, 118. In that case no mention is made as to the effect of a default but later in *Harlow* v. *Pulsifer*, 122 Me., 472, 475, 120 A., 621, 623, it is suggested by counsel that our Court seemed to indicate that the right of the obligee is "a demise so long as the purchaser" is not in default and to confine the right of severance and subsequent ownership to one "while in possession of land under an unimpaired contract of purchase." The language just quoted from *Harlow* v. *Pulsifer* is only dicta, for in that case, as well as in *Look* v. *Norton*, there was no default.

In the latter case, our Court likened the relationship between the obligor and obligee in a bond for sale of real estate, so far as the ownership of crops is concerned, "to those of landlord and tenant or mortgagor in possession and mortgagee," and said:

"While a person in possession of real estate under a contract of purchase, in some respects and for some purposes, is not a tenant, yet, so far as his ownership of crops severed by him while he remains in possession is concerned, his rights are similar to those of a tenant. In a certain sense he is a tenant at will."

Does the fact of the default change the relationship and its effect? We think not necessarily so. The vendor may permit one in default "to continue in possession" as much as one not in default. It may be to the advantage of the mortgagee that the mortgagor so remain. It would seem that where there is such permission the vendor by it, in the absence of evidence to the contrary, prima facie at least, manifests his willingness that the vendee during such possession shall have the right to the crops planted and harvested by him. Such conduct upon the part of the vendor, resulting in the vendee's performance of labor in planting and harvesting, as well as the incurrence of other expense, would the vendor be credited with a desire to deal fairly with the vendee, warrants an inference that such permit granted to the vendee the right of full ownership after severance.

Before severance the vendor, where it is not otherwise provided, may take possession of the land and the growing crops, but in case of the exercise of a right of redemption, must give credit for their fair value. If no redemption, the vendor holds them free from any claim by the vendee.

In *Killebrew et al.* v. *Hines et al.*, 10 S. E., 251 (N. C.), the Court, in speaking of an earlier decision in that State, said:

"It plainly recognizes the right of the vendor in the absence of any contract, express or implied, to the contrary, to take possession of the growing—the unsevered—crops made by the vendee, and the equitable right of the latter to have the same devoted to the payment of the former, so far as it may be ade-

160

quate. It further decides that when the vendor allows the vendee to remain in possession of the land, and make a crop, and sever the same, the former cannot recover the severed crop from the latter, or third persons; and this rests upon the ground of the presumed assent of the vendor to allow the vendee to make and take the crop. The like rule applies to mortgagee and mortgagor."

In the case cited there had been a default previous to the severance.

"A purchaser let into possession has, it has been said, the same general rights with respect to crops raised by him as a mortgagor would have, and, so long as there has been no default on his part *or he is permitted to remain in the possession,* the crops raised and harvested belong to him. If the purchaser's right to possession has been forfeited by his default in payment and a demand by the vendor for possession, he is not entitled to the benefit of crops which he thereafter plants, *if his possession is terminated before they are harvested."*— 27 R. C. L., Sec. 275, page 541, and cases cited in Footnotes 14 and 15.

The defendants rely particularly upon *Perley* v. *Chase,* 79 Me., 519, 11 A., 418, 419, but that case is clearly distinguishable because in it the hay was not harvested until after the expiration of the equity of redemption, while in the case at bar foreclosure proceedings had not been instituted. Subsequently to the expiration of the equity of redemption, the vendee not only has no right in the property but then has no basis for belief that he still remains in possession with any consent whatsoever of the vendor. In such a case, as held in *Perley* v. *Chase,* supra, he is simply a tenant at sufferance; in possession no longer by consent but simply because he has not been ousted as might a trespasser. Although still in possession, no longer is he rightfully in possession, for it can not be *assumed* after the equity or redemption has expired that the vendor still permits the vendee to continue in possession.

As stated by Justice Virgin in *Perley* v. *Chase,* supra, . . . "when the right of redemption has become 'forever foreclosed,' the relation

formerly existing has become extinguished; and if without any agreement, express or implied, the former mortgagor continues in possession after the determination of the particular estate by which he originally gained it, he thereby brings himself within the definition of a tenant at sufferance. . . . And if a tenant at sufferance, he is not entitled to emblements. . . . And if he were, emblements do not include the grass which is not an annual crop." Thus, *Perley* v. *Chase* not only fails to support the defendants' contention, but, upon analysis and application to the facts in the instant case, comes to the aid of the plaintiff.

We hold, therefore, that where no express provision is made by contract, the deciding factor as to whether the crops belong to the vendor out of possession or the vendee in possession, even though there has been a default, depends on whether or not the vendor allowed the vendee to be in possession at the time of severance. If so, they become the absolute property of the vendee; otherwise, not.

What was the fact, then, in this case as to such permission? It does not appear definitely in the agreed statement. It is a fact, however, that the vendee was in actual possession, starting with the consent of the vendor, and there being no evidence to the contrary, the presumption would be that it continued to be a permitted possession, even after default. It seems that before severance a real action had been brought by the vendor against the vendee but was dismissed. The inference would be that the vendor in dismissing his action intended to abandon his claim, at least for the present, and to continue to allow the vendee to remain in possession; either that, or that the effect would be as though no such action had been brought at all. After severance an action of forcible entry and detainer was commenced but that could not affect title to this hay previously perfected on severance.

We conclude, therefore, that the decision of the Justice in favor of the defendants can not be upheld on the ground that the plaintiff failed to show title to this hay.

Counsel for the defendants claimed also that the plaintiff failed to show conversion by the defendants. This contention is not sound, for the agreed statement of facts shows that these defendants refused to allow the plaintiff to take the hay, and, more than that, sold it "to one Bickford and got down payment." Clearly the de-

fendants exercised such dominion over this hay "in defiance of and inconsistent with" the plaintiff's right as owner as to constitute conversion. *McPheters v. Page*, 83 Me., 234, 22 A., 101; *Leader* v. *Telesphore Plante*, 95 Me., 343, 50 A., 53.

Again, it is insisted that the exceptions can not be sustained because the record does not show demand by the plaintiff and refusal by the defendants. While it is true that the agreed statement does not in so many words state that a demand for the hay was made, yet it does say "the refusal of Files Brothers to allow Goff, plaintiff, to take the hay is the conversion claimed." The word "refusal" just quoted warrants an inference either that the refusal was in consequence of a demand or that there was such a refusal as waived the necessity of a demand.

*Exceptions sustained. As stipulated, case remanded to Superior Court, where "damages are to be assessed" and then judgment be entered for plaintiff.*